Our first case for argument is 23-2133, Samsung v. Netlist. Mr. Hollis, please proceed. Good morning. May it please the Court. First, I'm glad to see the collegial clerk tradition continues. With regard to this appeal, I would start with Section 103, which focuses on the claims subject matter. And here, the Board did not focus on the claims subject matter. Instead, it looked at unclaimed details when it required bodily incorporation with respect to the two references it issued, rather than following this Court's law and looking at whether the teachings of the references could be combined in view of the level of ordinary skill in the art. A level of ordinary skill in the art that I would note included familiarity with memory design and also with built-in self-test, neither of which the Board referenced in its decisions. Samsung's simple combination of functional teachings was based on a first motivation of adding self-testing to a particular memory module, where, as noted, the level of skill included knowledge of self-test.  Yes, Judge. You said simple combination, and that sort of struck a nerve inside of me because when I looked at the proposed combination that you proposed, it seemed more like quite an elaborate proposal with multi-layers of modifications that would be required to Ellsbury's memory module in order to stick in the different pieces of the other references' self-testing system in order to match up with all the claimed elements as arranged in the claim, so I wish you wouldn't say simple combination because I find it to be a distraction. Could we get into a little bit more detail about why I shouldn't think it's so complex, the proposal of modifying the Ellsbury reference with using different pieces of Jedaloh in different places in Ellsbury and then, of course, yet doing further modifications to the switches and the pathways, et cetera? Respectfully, Your Honor, I think we can approach that by looking at what the Board said versus what Samsung actually said in its petition, which I think helps illustrate what the actual combination was that was put in front of the Board. The Board, in the appendix on page 40, stressed that its analysis was with regard to whether portions of Jedaloh's self-test module can be disassembled and distributed across Ellsbury's memory module. Respectfully, that is very much the type of bodily incorporation that this Court has seen previously. But that doesn't match up with what Samsung actually proposed. And for that, I would turn the Court to the petition that Samsung had, and specifically to page 123 in the appendix, where Samsung, and my guess is this is the figure you're thinking of, Your Honor, when you refer to it being complex, and that's on 124 where you'll see the different portions in the different figures. But it's important to look at the language that Samsung used in describing what was going on in 124. Samsung talked about, specifically, the combination of the functionality of the particular block diagram components being incorporated into Ellsbury, and then again at the bottom of page 123, the functionality of another set of components being incorporated into another part of Ellsbury. It wasn't a question of disassembling the module, taking particular pieces of circuitry. It was, in accordance with this Court's usual law, a question of the functionality, the teachings. And it's important in looking at the claim subject matter to realize that the issues that the Board focused on aren't in the claim. If you actually look at the specific claim, which of course is on the inside of both the blue brief and the red brief, the part of the claim that we're looking at is the very last clause, which is a where-as, or I guess a where-in clause describing the second mode. In each part of that clause, it is a device configured to, or a module configured to, or logic elements configured to. So very broad terms focusing only on functionality. So there was really no teaching of specific timing or synchronization or particular types of circuitry that are required by this claim. Instead, the claim just asked for functionality. And it relied on the person with the ordinary skill in the art to implement that functionality. Because, and it's undisputed, there's no teaching in the 523 patent of the details that the Board was focused on. In other words, the patented issue relied on the person with ordinary skill in the art to implement the very functionality that Netless now relies on in saying that the person with ordinary skill in the art wouldn't have found this obvious. If the person with ordinary skill in the art was able to implement the functionality with respect to these very broad functional claims, they certainly could do so with respect to the combination that was proposed by Samsung. And the reason I say it's simple, Your Honor, is because Jetalo is an example of built-in self-test, which is both standardized under the JetX standards, but also part of the skill, the person with ordinary skill in the art. That's something that sets this aside, or sets it apart, frankly, from what we see in other obviousness combinations. I'm struggling with that argument. I mean, your petition relied on Jetalo, right? And Jetalo supplied the self-test. And you put it in, inserted it into Ellsbury by basically dividing the functionality and the associated components that drove that functionality and locating them in two different parts of Ellsbury, right? I mean, that's what you've asked for and suggested renders these claims obvious, correct? In accordance with Jetalo, I agree with you, Your Honor. In accordance with Jetalo, we said you should implement the testing in accordance with the normal operation of the memory module. And for that, I would point to you that Jetalo specifically suggests that. And that is in column three at lines, looks like 47 through 51, where Jetalo says, you should self-test in the same way that normal operation occurs. So in Ellsbury, you have data going in one slot. That's where the data flows. And you have addressing and controlling occurring through a different circuit. Jetalo teaches that when you test, you should test in the same way as normal operation. Otherwise, you're not really testing the memory module. And so the data for testing should be in the data path. So maybe the problem is, I mean, even in your brief to us, I mean, look, this is the figure you gave us for what you need to amount to their, you know, this one here? Yes. That's their figure, yeah. So I tend to agree with Judge Chen that even in your presentation to us, you made it look anything but simple. And given that this is a substantial evidence review on our part, I don't see how we overturn the board's conclusion that you are asking to have the teachings of Jetalo chopped up and redistributed within Ellsbury. And that's really what they said. That's what they held. And that seems completely consistent with what you've argued to us in your brief. So given that, it's hard for me to conclude that there isn't substantial evidence for their conclusion, since I'm not a skilled artisan and I review for substantial evidence. They concluded that all of this was too much. It looks like a lot. Respectfully, Your Honor, there is a difference between disassembling and dividing circuitry and instead taking functionality the person or a skill only understands and implementing that using what is an agreed level of skill that includes circuit design and built-in self-test. The board did the former. And this court has a long line of cases saying you don't require that the various circuitry, the bodily incorporation. Where did they say the circuitry? That would be on page 40 of the appendix, Your Honor. Portions of General's self-test module cannot be disassembled and distributed across Ellsbury's memory module as proposed by petitioner. But that's exactly what you submitted in your petition and actually in your brief to us. This picture, that's why I held it up. You show in your brief to us the chopping up of those components and inserting them in different places. So why would the board have erred in assuming that that was the argument that you intended, since it's in your petition, in your pleadings to the board, in your brief to us? It seems like you have to live and die by the argument you chose to make. Respectfully, Your Honor, as I pointed out in the petition on page 123, we were very specific that it was the functionality, not the circuitry, that needed to be incorporated. And we said that twice, once with respect to the functionality going into the data path and once with respect to the functionality going into the control and address path. So on page 123, we talk about the functionality. I guess the question I have is why would it be wrong for the board and the patent owner to respond to your proposal to insert different functional blocks into different places in Ellsbury by saying, well, it's unclear why a skilled artisan would have the instinct to make all of these different choices when a skilled artisan would recognize that there would be a lot more to it than just a simple plug and play of different functional blocks. There would be timing and synchronization issues. Once you disaggregate all the pieces of Jetalo and move them into different places in Ellsbury, and likewise, you have to do further redesigns to the ASIC switches in Ellsbury, and then also you have to modify certain pathways inside of Ellsbury in order to do all these different things to isolate the system controller from the memory devices during the test mode. And so therefore, it starts to feel more and more like we're using the claim itself as a roadmap in order to make all these different iterative choices. Respectfully, Your Honor, the roadmap here is definitely Ellsbury. Ellsbury identified a memory module that had both the data with a path and then a separate control address path. And all Samsung suggested was that the person who had a skill in the art, who has knowledge of built-in self-test, would say, okay, we have a data module here. One of the things under the standards that everyone agrees to is that we do have to do some testing of that. You don't want to send that out into the world without any way of making sure it works. Jetalo itself, as I pointed out in column three, says, you test it in accordance with its normal operation, separated data from control and address. So Samsung looked and said, okay, well, if you take that functionality of Jetalo and you do what Jetalo says, which is test in accordance with normal operation, you would take the portions of the functionality that go to the data and you'd put it with the data path and you'd take the portions of the functionality that go to the addressing and command and you'd put it where the addressing and command are. That followed from what Samsung proposed, which was a two-step motivation. You first have a motivation to add self-testing. What about adding the multiplexers and demultiplexers into the switches? I mean, why would someone do that? So respectfully, Your Honor, if you'll look at Jetalo, and this is specifically the figure that everyone looks at in Jetalo, which is on Appendix 1176, right in the middle of the figure is a switch, and that's switch 260. Jetalo teaches specifically that that switch can be a multiplexer. It's one of the free embodiments that Jetalo gives for that switch. And that's on column 7 at line 30 and 31. The switch can also be a set of multiplexers. So this is specific old element teaching that Jetalo already said. This is what you can do. So we were not creating anything new. We were not asking for any new circuitry. We were saying Jetalo teaches doing this. So you do it in accordance with normal operation, which Jetalo also teaches at column 3. So this really was an old element set up. Yes, you have to take this old element and put it in normal operation where it goes. Data goes here. This element you put in normal operation where it goes. Control and address go here. But for 40 years since Enri Eder, this court has been careful to say, focus on the claimed subject matter. And the issues the court focused on, they aren't claimed. They're not even disclosed in the 523 patent. So we have this situation where we have a patentee who's saying, oh, you can't do this because of timing and synchronization and the issues they raise, none of which they taught in their own patent. As this court put it well in Lockwood, why would you focus on issues that the patentee said were in the skill and the art in saying that an obvious miscombination is in it? Well, one of your problems is they found your expert to be conclusory and they didn't trust his testimony. They made a clear credibility finding and they found the patentee's expert to be credible and the patentee's expert said what you're asking for, creating these new pathways, and the architecture in Ellsbury that would be required is outside. It's too complex to be considered obvious. And they credited that. And that was a fact-finding based on credibility. They expressly found your expert not credible and they expressly found the patentee's expert credible on whether these modifications take this outside the range of obviousness. We can't touch that on appeal. That's just not our business. Your Honor, we're not asking you to because those findings are irrelevant to the legally appropriate question, which is whether the teachings match up with the claimed subject matter. What the board was focusing on were findings. You've used all of your time and your rebuttal time. Why don't we save and I'll restore a little bit of rebuttal time, but let's move on because you're definitely out of time. Mr. Milliken, please proceed. Thank you, Your Honors. This is not a bodily incorporation case. Samsung lost it on the facts. Samsung did not have any prior art even suggesting testing that is aggregated in the way that the claims lay out. And so Samsung picked out Ellsbury, which doesn't talk about testing at all, and then tried to combine it with Jetalo, which discloses a unitary self-test module and, as the board found, has a completely different architecture than Ellsbury. Samsung then proposed a contorted theory, and it was very clear in its petition about what it was proposing. This is at Appendix 122 to 23. This theory requires slicing up Jetalo's testing module, distributing the pieces across Ellsbury, and then adding circuitry that neither reference discloses, all to get to a memory module that reads on the claims. And the board, in a thorough analysis- Assuming you want to have a test mode in Ellsbury, and it seems like there's decent grounds to want to have a test mode in any memory module, why wouldn't you apply the control address signals of Jetalo in the control unit of Ellsbury, and then the data signals for the test mode from Jetalo into the data module of Ellsbury? Just conceptually speaking, it seems to make some sense. You keep apples to apples and oranges with oranges. Right, understood, Your Honor. So the major problem with that conceptual argument is that, as the board found at Appendix 51 to 54, the prior art did disclose disaggregated or distributed architectures like Ellsbury that implemented self-testing. But they did self-testing in a different way than the claims require. Namely, they either put all of the self-testing functionality in what's equivalent to Ellsbury's control ASIC, or they duplicated all of the self-testing functionality and put it in each one of what's equivalent to Ellsbury's switch ASICs. And so there were distributed systems out there that implemented self-testing. There just wasn't one that did it in the way the claim convention does. And so that reinforces the board's finding that the only motivation that Samsung really came up with here was just pure hindsight. They were using the claims to try to piece together the prior art in a way that would read on them. And so the board found that there was sort of no motivation to begin with, and then beyond that found that the skilled artisan who was defined here to have an engineering degree and one year of experience would simply not be motivated to do this because it would entail so many complications. Both experts agreed that this combination would require redesigning Ellsbury and adding new circuitry. Both experts also agreed that no one had ever tried to disaggregate testing functionality in this way, even though, as I was discussing earlier, Judge Chin, both testing and distributed architectures have been around a long time. And the board credited our experts' testimony that this proposed redesign of Ellsbury would create intractable complications. The combination would require Ellsbury's control ASIC and switch ASICs to do things that they simply weren't designed to do. And the board found that this would cause all kinds of complications. It would introduce new signals going through new components and new directions. It would lead to... But all of that new stuff that would be added to Ellsbury, that's just a necessary byproduct of once you decide you want to have a test mode in Ellsbury. Of course there's going to be new signals. Of course there's going to be new elements and functionality inside of Ellsbury. You have to do that in order to have a test mode. So just saying you have to do new things to Ellsbury in order to get the test mode by itself is not enough of a persuasive argument. Well, the board found that if one were to want to implement testing in Ellsbury, one would have done it in one of the ways that the prior art taught, which the board found were simpler than the way that Samsung proposed. That's a factual issue. The board just found as a matter of fact. If the skilled artisan were motivated to add testing, they wouldn't have done it in the way that Samsung's combination proposed. That finding enjoys substantial evidence support. And I'll just go back briefly to Bottling Corporation since my friend's spent a significant amount of time on it. This argument fails factually and legally. Factually, the board didn't reject Samsung's argument on the basis that you couldn't physically put these two things together without modifying them. If the board were going to do that, the board could have stopped its analysis at page 34 once it reached Samsung's concession that you did have to redesign things to do this. The board went on for 20 more pages and explained why this specific redesign would not be obvious because it involved too many complexities and technical difficulties. That's consistent with the law, which requires a showing of why a skilled artisan would, not just could, make a proposed combination. Bottling Corporation is not a magic wand that you can wave on appeal to save a tortured combination of references. The complexity of an obviousness argument is highly relevant to whether it will succeed. This court's Bottling Corporation cases say that the absence of physical combinability standing alone doesn't defeat obviousness, but they decidedly do not say that any combination is obvious no matter how complicated and technically problematic if you can somehow piece it together with snippets of prior art. If the court has any questions, I'd be happy to answer them. Otherwise, I'll rest on the briefs and cede the balance of my time. Thank you, counsel. We'll restore two minutes of rebuttal time. Your Honor, we agree it's not a magic wand. Bottling Corporation needs to be applied to focus on the claim subject matter. One thing you didn't hear at all in that argument was any reference to how any of the details that the Board focused on are in the claims, not once. And there's a good reason that Section 103 says it's the claim subject matter that needs to be obvious. This court's Bottling Corporation law protects that requirement of the statute. It says don't look at a bunch of unclaimed details. Look at what the claims require. And that's why it's important that we focus on the fact that the Board required that you disassemble and divide the actual circuitry. Because Samsung said no, you look at the functionality, and that the person of ordinary skill in the art, understanding that functionality, would be able to implement the functionality in Ellsbury. And I'll point one other thing. My colleague said that the skilled artisan that had one year of engineering experience, he left out the entire second half of the person of ordinary skill, which is on appendix page 10. And that is that that person would be familiar with module design, that that person would be familiar with built-in self-test. There were specific skills and knowledge that were included in that level of ordinary skill that you didn't hear referenced in the argument you just heard. Finally, I would point out that he started with the idea that well, we don't have testing in prior art with the distributed data design. And we don't. This is not an anticipation case. But the reality is if that's your test, there's never going to be an obviousness case. Because only anticipation would have included testing in the distributed point with data, with the data, and with the control and address with the control and address. Yes, if we had had that piece of prior art, we probably would have brought it, and it would have been an anticipation case. But the fact that there's no anticipation case does not mean that the board is entitled to require unclaimed elements as part of its analysis in terms of assessing whether an obviousness combination has a motivation to combine. That's not the test. Anticipation is not the test. Unclaimed details is not the test. Thank you for restoring my time, Your Honor. Okay. I thank both counsel. This case is taken under submission.